IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JUAN ANTONIO CANNON, | |
| Plaintiff, | CIVIL ACTION NO.: 5:24-cv-25 |
| v. | |
| WILLIAM DANFORTH, and PAUL JOHNSON, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Defendants filed a Motion to Dismiss. Doc. 19. Plaintiff filed two Responses in opposition. Docs. 21, 22. Plaintiff also filed a Motion for Summary Judgment. Doc. 23. Defendants filed a Response in opposition to the Motion for Summary Judgment. Doc. 26. For the following reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss. I further **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

Plaintiff filed this suit under 42 U.S.C. § 1983, claiming that Defendants unlawfully refused to give him basic personal hygiene items. Doc. 1 at 5. Specifically, Plaintiff alleges: "I have no shower shoes" and "I had no toilet tissue and could not get any when I requested . . . it." Id. at 5. Plaintiff alleges that he alerted prison staff to the issue and staff informed him that they "could not locate" the property. Id.

Defendants filed their Motion to Dismiss, arguing that Plaintiff failed to exhaust available administrative remedies prior to filing suit because he failed to submit a lost/stolen property

claim. Doc. 19. Plaintiff filed a Response, arguing that he did not need to file a lost/stolen property claim because the property was not lost or stolen and, therefore, he properly exhausted available administrative remedies. Doc. 22.

## DISCUSSION

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).

2

Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL

201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II. Legal Framework for Evaluating Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 634 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding

the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

**III.    Applying <u>Turner</u>**

Defendants argue that the Court should dismiss the Complaint because Plaintiff failed to file a lost/stolen property claim prior to filing suit and, therefore, did not exhaust his available administrative remedies.  Doc. 19.

**A.    Coffee Correctional Facility's ("CCF") Policies**

CCF, where these claims arose, has a specific policy that applies when an inmate is deprived of his personal property.  Doc. 19-2.  The Inmate Handbook states: "There is a Lost/Stolen Property Claim procedure if you feel your property was lost/stolen.  The form to make this claim is available through the Unit Manager or any unit staff and must be completed within seven days of the incident." <u>Id.</u> at 6.  The policy then states, in bold print: "This procedure should be exhausted prior to filing a grievance." <u>Id.</u>

**B.    The Georgia Department of Corrections' ("GDC") Administrative Remedies**

CCF utilizes the GDC procedures for prisoner grievances.  Doc. 19-1.  The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02.  Under SOP 227.02, the grievance procedure applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "[n]on-Grievable Issues." <u>Id.</u> at 5.

The grievance procedure consists of two steps, the initial grievance and the Central Office Appeal. <u>Id.</u> at 9.  First, the inmate must submit a completed grievance form within 10 calendar days of "the date the Offender knew, or should have known, of the facts giving rise to the grievance." <u>Id.</u>  Then, the inmate may appeal the decision to the GDC Central Office under two circumstances: (1) after the inmate receives the Warden's response to the grievance; or (2) after the time allotted for the Warden to decide has expired. <u>Id.</u> at 15.  The SOP provides a

40-day period for the Warden's response to be given to the inmate, with the possibility provided for a 10-day extension.  Id. at 12.  An appeal must be filed within seven days of an inmate receiving the Warden's response.  Id. at 15.  If the Commissioner determines a grievance should have been accepted and processed, the grievance is returned for investigation, and the Warden/Superintendent has 15 calendar days from receipt to deliver the decision to the inmate.  Id. at 16.

      **C.**    **Defendants Have Not Shown Plaintiff Failed to Exhaust Available Administrative Remedies**

             **1.**    *Plaintiff's claims survive under* <u>*Turner*</u> *step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendants argue that Plaintiff did not properly exhaust his available administrative remedies because he failed to file a lost/stolen property claim.  Doc. 19.  Defendants acknowledge that Plaintiff filed a grievance but assert he still did not properly exhaust because CCF policy requires that he file a lost/stolen property claim prior to filing any grievance alleging missing personal property.[1]  Doc. 19 at 8–11.

Plaintiff filed Grievance Number 361576 on December 8, 2023, within seven days of the date of the incident, December 3, 2023.  Doc. 19-3 at 5.  The Warden responded to the grievance, recommending denial and explaining to Plaintiff that he should file a lost/stolen property claim before filing a grievance.  Id. at 4.  Plaintiff appealed, arguing that he "never got [his] property

---

[1] In their Motion, Defendants also state they attached the Declaration of Eva Harrell, but the declaration was not included with the filing.  Regardless, assuming the declaration is consistent with the statements in the Motion, I would reach the same conclusion about that dismissal for failure to exhaust is inappropriate here, even if the declaration had been included.

8

and personal items." Id. at 3.  The GDC Central Office responded to the appeal, affirming denial of Plaintiff's grievance for failure to file a lost/stolen property claim.  Id. at 2.  Plaintiff refused to acknowledge receipt of the Central Office appeal decision.  Id.  Plaintiff argues that he never alleged his property was lost or stolen and, therefore, "had no need to file a lost or stolen property claim."  Doc. 22 at 2.

Plaintiff's allegations and Defendants' allegations plainly conflict.  Defendants assert Plaintiff did not properly exhaust by filing a lost/stolen property claim.  Defendants also argue that, even if Plaintiff was not given toiletry items, shower supplies are given out "every Monday, Wednesday, and Friday."  Doc. 19 at 9.  Plaintiff argues that he did not need to file a lost/stolen property claim because that portion of the CCF procedures did not apply in his situation.  There is a genuine dispute of material fact, and—at step on under Turner—the Court must take Plaintiff's allegations as true.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

### 2. *Plaintiff's claims survive under Turner step two.*

The parties dispute whether Plaintiff properly followed CCF procedures by filing a grievance without filing a lost/stolen property claim and, therefore, whether he fully exhausted his administrative remedies before he filed his Complaint.  Thus, the Court must determine, as a factual matter, whether Plaintiff exhausted his administrative remedies.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374

9

(citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882

10

(11th Cir. 2012); <u>Singleton</u>, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process.  Therefore, the parties have had a sufficient opportunity to develop the record.

      Defendants have failed to show that Plaintiff did not exhaust his administrative remedies.  The record shows that CCF procedures require filing a lost/stolen property claim prior to filing a grievance.  However, the lost/stolen property procedure necessarily only applies "if you feel your property was lost/stolen."  Doc. 19-2 at 6.  In the Complaint, Plaintiff does not allege that his property was lost or stolen.  Rather, Plaintiff alleges that CCF never gave him basic toiletry and shower items that it issues to all inmates.  Doc. 1 at 5.  On a plain reading of this allegation, Plaintiff contends that he never received the items in question at all.  Therefore, there was no lost or stolen property for which to file a claim.  As such, the lost/stolen property procedure is not applicable to Plaintiff's alleged facts, and Plaintiff was not required to file a claim before filing a grievance.

      Because Plaintiff does not allege that his property was lost or stolen, Plaintiff properly exhausted administrative remedies by filing a grievance and was not required to file a lost/stolen property claim prior to doing so.  Therefore, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss.

### IV.    Plaintiff's Summary Judgment Motion

      Plaintiff separately filed a Motion for Summary Judgment.  Doc. 23.  It appears no discovery has occurred, so there is no evidence for the Court to consider.  In addition, a party moving for summary judgment must attach to the motion a statement of material facts.  Local R.

56.1. Plaintiff has not done so. Thus, Plaintiff's Motion is both premature and procedurally improper. I **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss. I further **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 26th day of August, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA